CASE 72.—ACTION BY S. A. D. WARD AND WIFE AGAINST
THE TRIPPLE STATE NATURAL GAS & OIL CO.
AND OTHERS TO RECOVER RENT.—January 29.

# Ward & Wife v. Tripple State Nat. Gas & Oil Co.

Appeal from Martin Circuit Court.

A. J. KIRK, Circuit Judge.

From the judgment plaintiffs appeal.—Reversed.

1. Mines and Minerals—Gas Leases—Surrender.—Under a gas
   lease, allowing 60 days' grace in the payment of annual
   rentals, and authorizing the lessee to surrender after five
   years, on payment of rentals to date of surrender, that the
   fifth annual rental was not paid until 10 days after expiration
   of the days of grace did not affect the lessee's right to sur-
   render at the end of five years from the date of the lease,
   where the lessor was duly notified that that lease would be
   surrendered then.

2. Same—Under a lease to drill for gas and to maintain a pipe
   line, that the lessee permitted the line to remain under the
   ground does not affect its right to surrender the lease if use
   of the line was abandoned, and it does not interfere with
   the lessor's use of the premises.

3. Landlord and Tenant—Leases—Surrender.—A lessee cannot
   avoid liability for rent by notice of a surrender of the lease,
   where he continues to occupy the premises; it being essential
   that the parties after the surrender occupy the same relation
   to the premises that they did before the execution of the
   lease.

4. Mines and Minerals—Gas Leases—Surrender—Form.—A sur-
   render of an unrecorded gas lease need not be in writing,
   signed and acknowledged; any notice being sufficient that
   definitely informs the adverse party that the lease has been
   surrendered, but the original lease should be either destroyed
   or redelivered to the lessor.

5. Same.—A recorded gas lease can only be surrendered by an entry duly made and acknowledged on the margin of the record, or by an instrument signed and acknowledged by the lessee.

A. COPLEY for appellants.

M. C. KIRK for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On the 6th of June, 1900, the appellant Ward and his wife, as lessors, entered into an agreement with the appellee company, the Tripple State Natural Gas & Oil Company, as lessee, the material parts of which are as follows, viz.: "Witnesseth: That the said lessors for and in consideration of the sum of one dollar to them in hand paid by the lessee, the receipt of which is hereby acknowledged, and the covenants and agreements hereinafter contained on the part of the said lessee to be by it paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, demise, lease and let unto the said lessee, its successors and assigns, for the sole and only purpose of mining and operating for gas, of laying, maintaining, operating and removing pipe lines * * * from all that certain tract of land situated in the county of Martin and State of Kentucky, bounded as follows * * * containing eight acres, more or less. * * * It is agreed that this lease shall remain in force for a term of thirty years from this date, and as long thereafter as gas is produced by the lessee, and as long thereafter as rentals hereinafter provided for shall be paid. In consideration of the premises, the said lessee covenants and agrees to pay $225.00 per year for the gas from each and every

gas well drilled on said premises, when gas is found in paying quantities; said payment to be made on each well within sixty days from completion, and to be paid yearly thereafter while gas from said well continues in paying quantities. The failure to comply with the terms of this lease upon the part of the lessee shall work a forfeiture of this lease, except as to the right of way for laying, maintaining and operating pipe lines:  *   *   *   Provided, however, that this lease shall become null and void and all rights hereunder shall cease and terminate unless a well shall be commenced on said premises within five years from date hereof, or unless the lessee shall pay an annual rent of $225.00 per year, said rental to commence on date hereof and to be paid within sixty days from date, and yearly thereafter. It is further agreed that the lessee shall have the right at any time after the expiration of five years to surrender this lease and be released from all moneys and obligations unfulfilled, provided second party pays all rentals up to date of said surrender. Then and from that time this lease and agreement shall be null and void, and no longer binding on either party; and the payments which shall have been made shall be held by the lessor as the full stipulated damages for the non-fulfillment of the foregoing contract." Under this lease the lessee did not sink any gas wells, but did pay the annual rent of $225 for the five years ending June 6, 1905. The lease was assigned by the lessee to the United States Natural Gas Company. In January, 1907, the lessor brought this suit to recover from the gas companies the sum of $356, the amount alleged to be due as rent from June 6, 1905, up to the institution of the suit, this amount being made up of $225 stated to be due for the year ending

June 6, 1906, and $131, the amount stated to be due from June 6 until January 6, 1907; it being alleged in the petition that, although the companies had failed to pay the rent due, they had not surrendered the lease. In an answer the companies denied any indebtedness and averred that the lease was surrendered according to its terms on June 6, 1905. In a reply that was not denied the lessor averred that the companies had run a pipe line through the leased land that was yet on the land, although it did not in any way interfere with the use and enjoyment of the land by the lessors. The law and facts being submitted to the court, it was adjudged that the lease had been surrendered, but that the companies owed the lessor $45.62, as rent from June 6, 1905, to August 19, 1905. This amount was allowed upon the theory that as the rent due June 6, 1905, was not paid until August 19, 1905, the companies should pay rent for the period of time between these dates. Not being satisfied with the judgment, the lessors prosecute this appeal.

The weight of the evidence is to the effect that on and before June 6, 1905, an authorized agent of the companies notified the lessor that unless he would reduce the rent, they would surrender the premises and contract at the expiration of the five years, and that he declined to reduce the rent, and was thereupon notified that the lease would be surrendered by the company, although the original lease was not delivered to the lessor. The evidence in respect to the pipe line is not very full, nor indeed is the reply, in which the pipe line is first mentioned. In the reply the only statement in reference to the pipe line is this: "It may be true that neither of them (the companies) have been in the possession of said land, but defendants' pipe line runs through said land, and

they have been using it for said purpose.   *   *   *
The defendants have, ever since said lease was exe-
cuted, had their pipe line on said land and running
through the same.'' The only evidence concerning
the pipe line is the testimony of appellant Ward, who
said ''defendants did not drill any well under the
lease, but the defendants' pipe line runs through the
leased premises, and it is occupying the land for said
purposes.'' There is no contradiction by the com-
panies of the fact that a pipe line was run through
the leased land.

It is the contention of appellant that as the last
payment was not made until August 19, 1905, and the
payment then made was only $225, which was the rent
for the year ending June 6, 1905, there was due at the
time of the last payment the rent for the period be-
tween June 6, 1905, and August 19, 1905, which was
not paid, and that by the terms of the contract the
lease could not be surrendered by the companies until
they had paid all the rentals up to the date of its
surrender; and so it is argued that, as the rentals
were not paid up to August 19, 1905, at which date
it is said the surrender was made, therefore the lease
was not surrendered within the terms of the contract.
Under the contract the companies had 60 days after
it became due to pay the annual rent; and, although
it appears that the last annual payment was not made
until August 19th, some 10 days after the expiration
of the 60 days, we do not regard this slight delay as
material in affecting the rights of the parties under
the- contract. The lessor was notified on June 6th
that the lease would be canceled and surrendered,
and the delay in the payment of the rent beyond the
days of grace allowed would not invalidate or set
aside a surrender previously made.

It is further insisted that as the companies have a pipe line through the land, which was placed there under the lease and has not been removed, they can not avoid the payment of the rentals so lang as they are thus occupying the leased premises. In other words, the argument is that the companies have not surrendered the lease, as they are using the premises for the only purpose they ever used them under the lease. It may be that the pipe line was abandoned by the companies when the lease was surrendered; and, if so, the mere fact that they permitted the material used in the pipe line to remain under the ground, where it does not in any particular disturb the lessor in the use, occupancy, or possession of his premises, would not render them liable for rents after the lease had been in fact surrendered. But if the companies after the time they claim to have surrendered the lease continued to use the pipe through the lessor's premises, for the purposes for which it was established, then they did not surrender the lease. The notice that they had surrendered the lease was not in fact a surrender so long as they continued to use the leased premises in the same way they had always used and occupied them under the lease. A lessee who is in the occupancy of leased premises under a contract that obliges him to pay a specified rent until he surrenders his lease can not avoid the payment of the rent by a mere notice of surrender, when, notwithstanding the notice, he continues in the occupancy of the premises. There must be a surrender in fact, a giving up of the premises for every purpose for which they were used under the lease. The lessor and lessee must, after the surrender, occupy towards the leased premises the same relation they did before the lease was entered into. Richardson v. Chenault, 31

S. W. 143, 17 Ky. Law Rep. 372; Ormsby Coal Company v. Bestwick, 120 Pa. 592, 18 Atl. 538.

A question is also raised as to the manner in which a surrender must be made. The lessor insists that the original lease should be returned to him, while the lessee claims the right to retain it as a part of its records. The lease was not put to record. Therefore a paper duly signed and acknowledged surrendering it was not necessary. If the lease had been recorded, it could only be surrendered by an entry duly made and acknowledged on the margin of the record book, on the - page on which it was recorded, or by an instrument of writing signed and acknowledged by the lessee, and that could be put on the record. But no particular form of words is necessary to surrender a verbal lease or one not put to record. Any notice, verbal or written, will be sufficient that gives to the other party definite information or notice that the lease has been surrendered, but the original lease should be either destroyed or delivered to the lessor. If only verbal notice is given, and the lessee retains the written lease, it might result in misunderstanding or dispute as to the time of the surrender or whether in fact a surrender was made.

In the condition of the pleadings and evidence we are unable to say whether or not the companies continued to use the pipe line after June 6, 1905. And so, on a return of the case, the parties should be permitted to file such pleadings as may be necessary to form an issue concerning the pipe line, and to take evidence in support thereof. If it appears from the evidence that the campanies did, on June 6, 1905, or at the time that notice of the surrender was given, abandon the use of the pipe line, the judgment here-

tofore entered should be re-entered, as the lessee is not complaining of it. But, if the pipe line through the lessor's premises was placed thereon under and by virtue of the lease, and the companies continued to use it after the time before mentioned, then they should be required to pay to the lessor the annual rentals specified in the contract until such time as they abandon the pipe line or remove it from the leased premises.

Wherefore the judgment is reversed, with directions for proceedings in conformity with this opinion.