**BRUNSWICK CORPORATION, Appellant,**

v.

**GOODIE INVESTMENTS, INCORPO-RATED, Appellee.**

Court of Appeals of Kentucky.

Feb. 27, 1970.

Henry D. Stratton, Stratton & Johnson, Pikeville, for appellant.

Edward R. Hays, Pikeville, for appellee.

MILLIKEN, Judge.

The Brunswick Corporation had a lease with Goodie Investments, Incorporated, which expired on August 31, 1967. In the middle of March of 1967 the property was severely damaged by flood, and on May 7 Brunswick notified Goodie by mail, after it had begun the removal of its bowling equipment, that it was exercising its right to cancel the lease. For some inexplicable reason Brunswick refused to turn over the keys to the property after several requests and even chained and padlocked the doors so that Goodie would have had to break the locks in order to enter the premises for the purpose of effecting repairs and mitigating its damage. As a result of Brunswick's withholding the keys and padlocking the property, Goodie sued for rent for the remaining period of the lease and, on motion for summary judgment, it was adjudged entitled to the rent under the lease from March 18, 1967 through August 31, 1967, when the lease expired. The issues on appeal are whether Goodie was entitled to recover and whether the rental value stipulated in the lease was the proper measure of recovery.

It is conceded that the flood rendered the leased premises unsuitable for the purpose for which they were leased and that Brunswick properly gave notice of its decision to cancel the lease. Section 11 of the lease absolved Brunswick from the payment of rent from the date of the flood until the date of restoration of the property, but nothing is said in the lease as to Brunswick's liability for rent from the date of the flood until it exercised its right to cancel the lease and the lease itself was a "Brunswick Bowling Establishment Lease". Section 8 of the lease gave the landlord, Goodie, access to the premises for the purposes of repairs, so long as it did not interfere unreasonably with the tenant's business. KRS 383.170 releases a tenant from the payment of rent for any premises leased by it which are destroyed by fire and other casualty without its fault or neglect, unless the lease itself stipulates otherwise.

We are thus confronted with the problem of whether Brunswick's failure to surrender possession negated the effectiveness of its letter of cancellation and, if it did, what was the proper measure of Goodie's damage. The trial court found that Brunswick had refused the keys and possession

after demand and had retained "constructive and technical possession of the premises until on or about August 31, 1967, at which time the lease expired", and concluded that Goodie was entitled to its rent for the remaining period of the lease.

From a purely practical standpoint, Brunswick's written cancellation of the lease did not of itself return to Goodie its property; only a surrender of the property would effect that. On three separate occasions Goodie notified Brunswick by mail of the fact that Brunswick was retaining possession of the property after it claimed it had cancelled the lease and, also, Brunswick's representative had refused to turn over his keys to Goodie because he had instructions not to deliver them and instead to lock the premises. Goodie had a key to the premises, but none to the padlock. The back door to the property was bolted from the inside. We agree with the conclusion of the trial judge that Brunswick retained possession of the property during the remainder of the lease period and, as a consequence, is liable for the rent prescribed by the lease.

This is not a case of a tenant holding over after the expiration of a lease where "as a general rule the measure of damages for the lessee's failure or refusal to redeliver possession is the fair and reasonable rental value of the premises, or the reasonable value of the use and occupation of the premises, for the period of the wrongful withholding of possession, and the rental value is presumptively the amount of rent stipulated in the lease computed with reference to the time during which the lessor is kept out of possession * * *". 51C C.J.S. Landlord & Tenant § 316, page 802. The case at bar is a holding over during the remainder of the lease period after having given notice of cancellation of the lease but not actually surrendering the leased premises in order to complete the cancellation. In other words, Brunswick continued its occupancy of the premises notwithstanding its notice of cancellation or surrender of the lease. We agree with the view expressed in Ward et ux. v. Tripple State Natural Gas & Oil Co., 131 Ky. 711, 115 S.W. 819 at page 821,

"A lessee who is in the occupancy of leased premises under a contract that obliges him to pay a specified rent until he surrenders his lease cannot avoid the payment of the rent by a mere notice of surrender, when, notwithstanding the notice, he continues in the occupancy of the premises. There must be a surrender in fact, a giving up of the premises for every purpose for which they were used under the lease. The lessor and lessee must, after the surrender, occupy towards the leased premises the same relation they did before the lease was entered into."

A lease is a fusion of contract law and property law (Corbin, Section 686) and in this instance Brunswick exercised its contractual power to cancel, but failed and refused to surrender possession—the property interest the lease covered for which rent was the consideration.

The judgment is affirmed.

All concur.