Butler v. City of Iola.

---

No. 20,707.

JOSHUA BUTLER, *Appellee*, v. THE CITY OF IOLA, *Appellant*.

SYLLABUS BY THE COURT.

1. LEASE—*Gas Land—Annual Rental—Duration of Lease—Not Indefinite or Uncertain.* A city entered into a lease with the plaintiff by which it acquired the gas rights to a tract of land and agreed to pay therefor an annual rental of $200. The lease provided that it should remain in force for the same length of time as another lease covering gas rights to an adjoining tract upon which the city was then operating gas wells. *Held*, the lease is not void on the ground that its duration is indefinite and uncertain.

2. SAME—*Attempted Cancellation Ineffective.* After making the annual payments of rental for seven years the city, while still operating gas wells on the adjoining lands under the other lease, attempted to cancel its lease with plaintiff by executing and recording a release thereof, and refusing to make further payment of rentals. *Held*, the attempted cancellation was of no effect, and so long as the lease remains in force the city can not avoid its liability thereunder on the ground that the rights obtained are of no value.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed March 10, 1917. Affirmed.

*H. A. Ewing, S. A. Gard,* and *G. R. Gard,* all of Iola, for the appellant.

*C. S. Ritter,* of Iola, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The city of Iola is a city of the second class. On February 23, 1907, it entered into a written lease by the terms of which it purchased the oil and gas under a twenty-acre tract of land belonging to plaintiff and situated near the city. Plaintiff was paid the sum of $200 when the lease was executed, and the city agreed to pay him a like sum annually

so long as the lease remained in force. At that time the city held a gas lease on a tract in an adjoining section known as the Lanyon Zinc Company lease, and plaintiff's lease provided that it should remain in force for the same length of time as the Lanyon lease continued in force. Annual payments were made by the city for each year from 1908 to 1913, inclusive, when further payments were refused. The plaintiff brought this action to recover for the payments due for 1914 and 1915.

The city filed an answer admitting that it entered into the lease in question, but alleging that the lease was without consideration and was void for uncertainty as to the time covered by it. As a further defense the answer alleged that in March, 1914, the parties had agreed to cancel the lease, and that pursuant thereto the city had executed and delivered to plaintiff a release and surrender, in writing, of the lease, and that the release was duly recorded in the office of the register of deeds, March 13, 1914. Attached to the answer were copies of the proceedings before the board of commissioners of the city authorizing the execution of the release. The reply denied that the lease had been satisfied or canceled, and averred that it remained in full force and effect.

After the plaintiff's testimony was introduced, the defendant produced as a witness the mayor of the city, who testified that he was familiar with the gas situation on and near the land embraced in plaintiff's lease, that in his judgment no gas could be obtained from the lands and that the lease was of no value; further, that this was the reason the board of commissioners had ordered the lease canceled, and that a release was executed and recorded as alleged in the answer. Another witness for defendant testified that he was commissioner of public utilities and streets for the defendant city and had charge of its gas properties; that he was familiar with the conditions surrounding the lands covered by the lease and that in his judgment gas could not be obtained in paying quantities on these lands, and that the lease was of no value. On rebuttal the plaintiff testified that the attempted cancellation of the lease was without his authority or consent.

The court rendered judgment in plaintiff's favor for the installments sued for, from which the city appeals.

1. One contention is that the lease is so indefinite as to the time it shall expire as to render it void. The provision in question reads:

"This lease shall remain in force for the same length of time which one certain lease from said first parties to the Lanyon Zinc Company, upon parts of sections three and four, township 25, range 18, in said county, *now owned by said second party shall be and remain in force*." (Italics ours.)

In this connection it is insisted that the rights of the lessor in the Lanyon lease have in the meantime been assigned to a smelter company and belong to a stranger, that the city is powerless to compel its cancellation, and therefore may never be able to cancel the one in controversy. Plainly, the rights of the city under the Lanyon lease have not been the slightest degree affected by the fact that the original lessor has assigned his interests therein to another. The city has the same right to cease operating under it that it had before the lessor's interest was transferred. The plaintiff and the city saw fit to fix the duration of plaintiff's lease to coincide with that of the other lease, to which the city was and is a party; and if plaintiff does not complain that his rights might be arbitrarily terminated or his liabilities unduly extended by the act or conduct of the parties to the other lease, we see no reason why the city can complain. So long as its rights and liabilities under the Lanyon lease continue, its rights under the plaintiff's lease can not be taken from it. It appears that the city is still operating the gas wells on the 535-acre tract in the Lanyon lease which adjoins the land in the lease with plaintiff. Indeed, it is suggested as a reason the city is willing to surrender its rights under the plaintiff's lease, that by operating the wells on the adjoining lands it has been and still is able to secure much of the gas underlying the land covered by the plaintiff's lease.

The question is not before us for determination, but a reasonable construction of the language of the clause which declares that the lease shall continue in force so long as the other lease owned by the city is in force would seem to be, that whenever the city ceases to own and operate under the former the lease with the plaintiff terminates. Both parties undoubtedly understood that the purpose of the city was to control the gas rights

under the second lease, only so long as it was interested in obtaining gas from the adjoining tract. We think it can not be said that the duration of the plaintiff's lease is so uncertain or indefinite as to render it void.

2. The contention that the city has a right to surrender and cancel the lease on the ground that it is of no value can not be sustained. If the rights obtained from the plaintiff had turned out to be of vast benefit to the city, it would seem a harsh rule which permitted plaintiff to terminate the lease and thereby deprive the city of its profits. On the other hand it would be quite as unjust and inequitable to permit the city to speculate upon the future value of the lease—retain its rights under the lease if found to be valuable, and cancel the lease if found advantageous to do so. The city, like any other party, is bound by its contracts legally entered into. It can not relieve itself of liability from its contract merely by proof that it has entered into a bad bargain.

Defendant cites the following language from Donahue on Petroleum and Gas, page 207: "But the lessee is not bound to develop the land or pay for the prospective royalty when the land could not be worked at a profit." An examination of the text from which the quotation is taken and the authorities cited in the notes shows, however, that the language was not intended to apply, and of course could not apply, to a case where an agreed rental is stipulated in payment of the oil or gas rights. The cases cited in the notes are those in which the lessee obtained a mere license to explore for oil and gas and upon certain contingencies agreed to pay a royalty. Here the city bargained for and obtained the gas rights of a tract of land and agreed to pay an annual rental therefor, to continue so long as the lease remained in force. For seven years the parties so construed the terms of the lease and the city paid the annual rental.

It is stated in the plaintiff's brief that the city paid $5000 for the gas rights in the Lanyon lease, and that its purpose in entering into the lease with plaintiff was to protect its rights under the other lease. That this must have been the principal inducement for taking the lease with plaintiff is obvious from the fact that no wells have been sunk on the land covered thereby.

We think no authorities need be cited to show that the judgment must be affirmed.