### CAMPBELL et ux. v. McFARLANE.
### (No. 8049.)

(Court of Civil Appeals of Texas. Galveston. April 28, 1921. Rehearing Denied June 2, 1921.)

**1. Frauds, statute of 63(4)—Verbal agreement not to take possession of property under written contract could not divest rights of life tenant.**

Where a written contract between defendants and plaintiff conveyed to plaintiff a life estate in certain property, plaintiff's verbal agreement that he would not occupy the premises, but would allow defendants to lease it for his benefit, was void under the statute in the absence of an estoppel, and could not divest plaintiff's title and right of possession.

**2. Life estates 28—Evidence held to support instructed verdict for life tenant suing to recover possession.**

In a suit to recover the possession of property in which defendants had conveyed a life

estate to plaintiff, defended on the ground that following the execution of the written contract, it was agreed, in consideration of defendants' collection of the rents for plaintiff, that plaintiff thereby renounced his right of possession, evidence *held* to justify the court in instructing a verdict for plaintiff.

Appeal from District Court, Anderson County; John S. Prince, Judge.

Suit by J. E. McFarlane against J. A. Campbell and wife. Judgment for plaintiff, and defendants appeal. Affirmed.

Campbell, Greenwood & Barton, of Palestine, for appellants.

Seagler & Pickett, of Palestine, for appellee.

PLEASANTS, C. J. This suit was brought by appellee against the appellants to recover possession of certain premises situated in the city of Palestine, Tex., and damages for the alleged breach by appellants of the covenants of their contract by which they conveyed to appellee the premises in controversy.

The substance of plaintiff's petition is sufficiently stated in appellants' brief as follows:

"That on May 14, 1914, appellee and appellants entered into a written contract wherein appellants, in consideration of the payment to them of $2,250, agreed to lease to appellee for the term of his natural life lot 3 in block 4, according to the original map and plot of the city of Palestine, in Anderson county, Tex., together with the improvements situated thereon. Appellants bound themselves to pay taxes, insurance, and to keep up the improvements on said property. That appellants agreed to furnish board, room, and proper laundry for appellee during his life. That by the terms of said contract appellants became bound to surrender the possession of said property to appellee, same to be held during his natural life, and that all rents and revenues accruing from said property were to become the property of appellee. Appellee alleged that said instrument was a continuing contract. Appellee alleged that possession was delivered to him upon the execution of said contract, and that he continued to hold same up to May 1, 1916, when appellants took possession of same. Appellee further alleged that appellants, under the terms of said contract, furnished his room, board, and laundry up to November 26, 1915. That on or about the last-named date appellants ordered him from their home and breached said contract. That appellee was entitled to recover the sum of $1,530 for failure to furnish him board, room, and laundry. Appellee prayed for judgment for possession of the property, described as aforesaid, for the term of his life, and for $1,530 damages for breach of said contract as above set out."

The answer of defendants admits the execution of the contract as alleged in the petition, and in avoidance thereof pleads:

"That immediately after the execution of said contract appellee entered into a separate and distinct verbal contract superseding the written contract pleaded by appellee herein, whereby it was agreed and understood that appellee did not desire to hold the possession of the property aforesaid, but refused to do so, and it was thereupon agreed by and between appellants and appellee that appellants would collect the rents from said property and turn them over to appellee or his agent, and that at no time would plaintiff demand possession of same, and that, in consideration of the collection of the rents by appellants for appellee, he forever renounced his right of possession. That, in pursuance of said last-named contract, appellants diligently collected the rents and turned same over to appellee up to the time suit was filed."

They further pleaded the statute of limitation of four years.

The cause was tried in the court below with a jury, and after hearing the evidence the trial judge instructed the jury to return a verdict for the plaintiff for the possession of the premises. He further instructed the jury that, if plaintiff had voluntarily left the home of the defendants, he could not recover upon his claim for damages, and that in no event could he recover more than the value of a room, board, and laundry for four years before the filing of the suit.

Under this charge the jury returned a verdict in favor of plaintiff for possession of the premises and for damages in the sum of $250, and judgment was rendered in accordance therewith.

The only assignment of error presented in appellants' brief complains of the charge of the court instructing the jury to return a verdict for the plaintiff for possession of the premises, on the ground that the evidence was sufficient to raise the issue of the modification of the original contract pleaded by the defendants, and that issue should have been submitted to the jury.

[1] We do not think the assignment should be sustained. The written contract between the parties conveys to the appellee a life estate in the property therein described. Appellee's title and right of possession to the estate could not be divested by a verbal agreement that he would not occupy the premises, but would allow appellants to lease it for his benefit, and this is the effect of the agreement set out in the answer and testified to by appellants.

Aside from the question of want of consideration for the alleged agreement, any attempted verbal relinquishment of a life estate is void under the statute of frauds unless such agreement can be enforced upon the principle of estoppel, and estoppel is not raised by the pleadings or the evidence.

[2] The evidence relied on by appellants to sustain their contention that appellee has lost his right of possession of the property admittedly conveyed to him by them is as follows:

W. R. Petty testified as follows:

"I am a practicing lawyer at this bar. I heard a conversation between Mrs. Campbell and Mr. McFarlane with reference to the renting of this house. It was at the time the contract was executed. It was while Mrs. Campbell was writing her name in the contract, was when the conversation came up there between McFarlane and her. He made the remark, addressing Mrs. Campbell, says, 'Florence I am not going to take the rent of that house;' says, 'I don't want the rent of the house.' I said, 'Mr. McFarlane, I understood you to say that you were to have the rent on this house is the reason I drew it this way.' He says to Mrs. Campbell, 'You can have the control of the house all the time, and rent it to whoever you please.' That was after she signed the instrument. They were at the home of Mr. and Mrs. Campbell when this conversation took place, about this verbal contract."

Appellant Florence E. Campbell testified:

"Mr. McFarlane never demanded possession of this house from me until this suit was filed. Immediately after this contract was signed I had an agreement and understanding with Mr. McFarlane with reference to the collection of the rent. It was a verbal agreement we went into when we was building the house there. The agreement was made when we were signing up the contract. After the contract was signed up, until the house was ready to rent, I had it in my mind all the time to rent the house and collect the rent and get a tenant for it. As I told you, we just talked a verbal contract; that he didn't want anything to do with the house, and said for me to take it and rent it, and I did it."

J. E. McFarlane testified as follows:

"I heard the testimony of Mr. Petty this morning to the effect that there was a conversation taken place about the time we were signing up these papers with reference to some kind of verbal agreement by which I was to let them have charge of this rent house. It is not true. As I said before, there was no agreement between me and Mrs. Campbell with reference to their holding possession of this building under the contract."

J. A. Campbell testified:

"After this contract was signed it came up then about renting the house, and we put in a plea of wanting to handle the house, on account of the children and the keeping up the house, and Mr. McFarlane said that was all right with him. I don't want to enter into any of our arguments in order to get me to sign it, but after this he said he would not exact the rent of the house off of us, only as he would need money, for us to take the house and handle it, and turn him over the money whenever he wanted money. I don't know as the word 'possession' was used, any more than he told us to take the house and handle it to suit ourselves. We have always since that time handled the house with that understanding. After

the signing of this contract Mr. McFarlane authorized us to collect the rent. Mr. Petty was there on the gallery when this conversation came up."

We think upon this evidence the trial court properly instructed the jury to return a verdict for the plaintiff for possession of the property.

It follows that the judgment should be affirmed, and it has been so ordered.

Affirmed.