## May *v.* Hazelwood Oil Company, Appellant.

[Marked to be reported.]

*Oil lease—Forfeiture—Affidavit of defence.*

An oil lease provided that the lessee should commence and prosecute to completion a test well for oil or gas on the demised premises, or upon other lands in the vicinity thereof, within thirty days after leases to the amount of five thousand acres shall have been obtained by the lessee, or else forfeit the rights granted by the lease, and should the lessee fail to obtain leases covering five thousand acres by the first day of January, 1887, the lessee should thereupon elect to proceed and drill as before stated in the lease, or, at its option, forfeit the lease; and further, it was agreed that the lease should be determined at the option of the lessee, its successors or assigns, should a fair test fail to develop oil or gas in quantities to warrant further operations, notice of such determination to be given to the lessor in writing. The lease further provided for the payment of one dollar per acre for not drilling and prosecuting to completion one well on the premises within one year from the date of the lease.

In an action to recover the rental provided by the said clause, an affidavit of defence is sufficient which avers that a test well was actually drilled, and that it proved to be a dry hole, yielding neither oil nor gas, and that the test proved that no oil or gas was to be found upon the premises; that defendant openly and publicly removed the drilling machinery from the premises and abandoned all further operations thereon, and that plaintiff, well knowing that the well was a dry hole and that the premises

had been abandoned, made no claim upon the defendant for any sum of money due under the lease for several years, and waived the service of any written notice of the forfeiture by defendant; and that subsequently plaintiff granted to another party an option to purchase all the underlying coal from the premises.

Argued Nov. 3, 1892.   Appeal, No. 185, Oct. T., 1892, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1892, No. 458, for plaintiff, John C. May.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit for rental under oil lease.

From plaintiff's statement it appeared that on Nov. 4, 1886, John C. May executed an oil lease to the Hazelwood Oil Co., in which the lessee covenanted as follows :

" To deliver upon the premises, or in such pipe line or lines as may be connected therewith, the equal one-eighth part of all petroleum or carbon oil produced from the same, as produced.

" To use the premises herein demised in such way and manner as to occasion as little damage and inconvenience to first party as possible, consistent with the purposes of this demise.

" Said party of the second part is to have the free use of sufficient gas from the premises herein demised, to carry on the necessary operations thereon, and first party to have a concurrent right to use gas for household purposes, all expenses attendant upon such use to be paid by the party using the same, and further, if gas is taken from said premises to be used elsewhere to pay first party at the rate of $50 per annum for each well from which gas is taken, so long as the same is so used. In case gas is found in paying quantities in any well drilled on said lands the first party to be paid by said second party the one-eighth part of any sum received for the sale of such well or wells in case of a sale thereof.

" To begin the drilling of a well for oil or gas upon the above described premises within one year from the date hereof, and to prosecute the drilling of the same with reasonable diligence to completion, or thereafter to pay to said first party one dollar per acre per annum until such operations on said premises are begun and prosecuted as herein stated and a failure to pay the same, within three months after maturity, unless the

time for such payment be extended in writing by first party, shall work an immediate forfeiture on this lease and thereafter the same shall not be binding upon either party.

"And it is further stipulated and agreed by said second party, its successors or assigns, that it will commence and prosecute to completion a test well for oil or gas on said premises, or upon other lands in the vicinity thereof within thirty days after leases to the amount of five thousand acres shall have been obtained by the same, or else forfeit the rights hereby granted, and should it fail to obtain leases covering five thousand acres by the first day of January, A. D. 1887, it shall thereupon elect to proceed and drill as last above stated, or at its option forfeit this lease, and further covenants to drill no well within one hundred yards of any dwelling house or other building appurtenant thereto, without the consent of first party, first had in writing.

"This agreement to be determined at the option of second party, its successors, or assigns, should a fair test fail to develop oil or gas in quantities to warrant further operations, notice of such determination to be given in writing to first party.

"This agreement to be binding upon the heirs, administrators, successors or assigns of the parties hereto."

The material averments of the affidavit of defence are stated in the opinion of the Supreme Court.

The court made absolute a rule for judgment for want of a sufficient affidavit of defence.

*Error assigned* was this order.

*James R. Sterrett, Philip Y. Pendleton* with him, for appellant.—The pleadings show that appellee's property has been thoroughly tested, which is all that could be required under the terms of the lease.

The pleadings also show that appellee exercised his right to treat the lease as forfeited, or, at least, raise the question of fact as to whether he has not elected to treat the same as forfeited: Galey v. Kellerman, 123 Pa. 496; Willis v. Manufacturers Nat. Gas Co., 130 Pa. 229; Ray v. Gas Co., 138 Pa. 576.

The coal option was direct and positive evidence of May's

election to exercise his right to treat said lease as forfeited. No stronger or more persuasive evidence of an assertion of his intention to treat the lease as forfeited can be produced.   In it he solemnly covenants, under his hand and seal, to convey the coal in fee simple clear of all encumbrances.   A conveyance of coal underlying land is not only a fee simple grant of the coal, but also such a grant of the space left after the removal of the coal : Lillibridge v. Lackawanna Coal Co., 143 Pa. 293.   If a freeholder grants lands excepting mines he severs his estate in parallel layers, etc. : Eardley v. Granville, L. R. 3 Ch. Div. 826.

*D. F. Patterson, John R. Braddock* with him, for appellee.— The statement contains a plain averment that no notice in writing was ever given by appellant to appellee of its determination to abandon the lease upon the second ground above mentioned, and there is no specific denial of this averment.

To make its averment of the waiver of written notice by appellee, and his having of actual notice, available to prevent judgment against it, the duty was plainly incumbent upon appellant to state the facts constituting the asserted waiver and actual notice, so that the court may determine whether or not such alleged facts, if established by sufficient evidence, would constitute a legal waiver of notice : Kaufman v. Cooper Iron Co., 105 Pa. 537 ; Gould v. Gage, 118 Pa. 559 ; Class v. Kingsley, 142 Pa. 636 ; Chain v. Hart, 140 Pa. 374.

There is no averment that the rights and privileges mentioned in the coal option would interfere in the slightest degree with the rights and privileges mentioned in the demise to the appellant, any more than the lease of a portion of the farm for agricultural purposes would so interfere.   No such assumption can be made as a matter of law.

OPINION BY MR. JUSTICE GREEN, January 3, 1893 :

By the express terms of the lease between the parties it was agreed that the lessee would commence and prosecute to completion a test well for oil or gas on the demised premises or upon other lands in the vicinity thereof, within thirty days after leases to the amount of five thousand acres shall have been obtained by the lessee, or else forfeit the rights granted by the lease, and should the lessee fail to obtain leases covering

five thousand acres by the first day of January, 1887, the lessees should thereupon elect to proceed and drill as before stated in the lease, or, at its option, forfeit the lease, and further it was agreed that the lease should be determined at the option of the lessee, its successors or assigns, should a fair test fail to develop oil or gas in quantities to warrant further operations, notice of such determination to be given to the lessor in writing.

The affidavit of defence alleges that the defendant failed to obtain leases covering five thousand acres, and elected to drill a test well for oil or gas upon other lands adjoining the plaintiff's premises, and did, within a year from the date of the lease, commence the drilling of a test well on land immediately adjoining the lands of the plaintiff, and without delay prosecuted the same to completion in May, 1887, at an actual cost of $6,548.62, which said test well was drilled to a depth of 2630 feet and neither gas nor oil, nor oil or gas bearing rock was found, and thoroughly tested plaintiff's and other lands in that locality and proved conclusively that neither gas nor oil was to be found thereon, and upon the completion of said test well the said lease was forfeited and terminated. The affidavit further alleged that it was known to the plaintiff, and well understood by him, that this well was to be put down as a test well for his and other lands leased by the defendant in that locality, and should neither oil nor gas be found therein, in paying quantities, the said contract or lease between the plaintiff and defendant was to be forfeited. The affidavit further sets forth that the plaintiff had actual notice of the surrender and termination of the lease, when the test well was completed and the derrick, tools and machinery were removed; and that the whole of said leased territory including the plaintiff's premises was abandoned by the defendant, all of which was known to the plaintiff who considered and treated the contract as forfeited and no longer in existence, and knew the said test well was a dry hole yielding neither oil nor gas in any quantity whatever, and waived the giving of a written notice of its forfeiture, and reassumed and took unto himself all the rights, privileges and powers which he had granted and conveyed to the defendant in the lease, and repossessed himself of the entire possession which he had granted to the defendant; that the plaintiff knew that the premises leased had been abandoned by the defendant, and

made no claim upon the defendant for any sum alleged to be due under the lease until shortly before bringing the suit. The supplemental affidavit alleges, in addition to the foregoing, that on the 16th of July, 1890, the plaintiff granted and conveyed, by instrument in writing and under seal, and a copy of which is annexed, the exclusive right, privilege and option to purchase and take from said premises all the merchantable coal underlying the same, and that by making this contract the plaintiff elected to treat as forfeited the oil lease on which he is now seeking to recover.

While it is true that some of the foregoing averments are made and stated rather in the way of conclusions from acts done than by way of stating the acts themselves, yet there is a very distinct and positive allegation that a test well such as was authorized by the lease, was actually drilled at a heavy cost, which was stated, and that it proved to be a dry hole, yielding neither oil nor gas, and that this well did conclusively test and prove that no oil or gas, nor any oil or gas bearing rock was to be found upon the leased premises. And it is also distinctly stated that the defendant openly and publicly removed the drilling machinery from the premises and abandoned all further operations thereon, and that the plaintiff, well knowing that the well was a dry hole and that the premises had been abandoned, made no claim upon the defendant for any sum of money due under the lease for several years, and waived the service of any written notice of the forfeiture by the defendant. The supplemental affidavit distinctly avers the grant by the plaintiff of an option to purchase and take all the underlying coal from the premises, a fact which is only consistent with the idea that the plaintiff himself considered that the oil and gas lease to the defendant had been forfeited. It is manifest to us that these facts are entirely inconsistent with any right of the plaintiff to recover upon that clause of the lease, which provides for the payment of one dollar per acre for not drilling and prosecuting to completion one well on the premises within one year from the date of the lease. That provision was subject to the operation of the next succeeding clause, which gave the defendant an option to drill the well on the leased premises, or on adjoining lands, and this option was exercised with the result that no oil or gas was found

As that contingency would have relieved the defendant from paying the one dollar per acre, we do not see how the defendant can be held in default so as to incur that penalty in view of the positive averments relating to the drilling of the well and its results. The only condition which required, as its alternative, the payment of the one dollar per acre, was not broken when the defendant actually did drill a well on premises adjoining, which proved there was no oil or gas to be found. We do not understand that a forfeiture of the contract by a distinct notice to that effect is essential to relieve the defendant from the penalty of paying one dollar per acre. It is true that by the final clause of the lease it is provided that if the defendant determines to forfeit the lease, notice of that determination should be given the lessor. But the payment of the one dollar per acre is not provided as a penalty for not giving such a notice. It is only for not commencing within one year to drill a well, and prosecuting the drilling to completion, that the penalty is provided. Even if a distinct written notice of forfeiture was required of the defendant to give relief against the penalty, the affidavit alleges a waiver of such notice, and also that the plaintiff had actual notice. This raises a question of fact which can only be determined by a jury. Although written notices are required by instruments, we have often held that such notices may be waived by the act of the party entitled to them. Upon a full consideration of the affidavits we are of opinion that enough has been alleged in them to require the submission of the case to a jury.

Judgment reversed and procedendo awarded.