**TEXAS PAC. COAL & OIL CO. v. GHOLSON et al. (No. 11837.)***

Court of Civil Appeals of Texas. Fort Worth. Oct. 15, 1927.

Rehearing Denied Nov. 26, 1927.

1. Mines and minerals ⬀79(7)—In suit to recover ground rentals after lessee's attempted cancellation, admitting portions of deed from subsequent purchaser showing he was not entitled to ground rentals held not erroneous.

In suit to recover ground rentals under oil and gas lease after an attempted cancellation by lessee, admission of portion of deed from subsequent purchaser to grantor showing that parties did not intend at time of sale, under deed reserving mineral rights, that purchaser should be entitled to any of the ground rentals to be paid under mineral lease held not erroneous, particularly since objection was to the whole deed, portions of which were undoubtedly admissible. *

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 7, 1928.

**2. Mines and minerals ⬤➞79(7)—Attorney's testimony that plaintiff had consulted him relative to claim for ground rentals under mineral lease year before filing suit held admissible.**

In suit to collect ground rents under mineral lease after attempted cancellation by lessee, testimony of attorney that plaintiff had talked to him about claim about a year before filing suit *held* admissible to show that he had never agreed or intended to release defendant of obligations under the lease, as contended by defendant, particularly in view of fact that witness testified without objection to practically the same facts, and testimony of plaintiff was received without objection as to such consultation.

**3. Appeal and error ⬤➞930(1)—Plaintiff's testimony must be given utmost credence on defendant's appeal.**

The utmost credence must be given to plaintiff's testimony on appeal by defendant.

**4. Mines and minerals ⬤➞79(7)—Evidence in action for ground rents held not to show, as matter of law, that lessor accepted or acquiesced in attempted cancellation of mineral lease by lessee.**

In suit to recover ground rentals under mineral lease after attempted cancellation by lessee, evidence *held* not to show, as a matter of law, that lessor either accepted or acquiesced in attempted cancellation of such lease by lessee.

**5. Mines and minerals ⬤➞77—Lessee held not entitled to abandon mineral lease and relieve himself of obligation to pay ground rent specified.**

Lessee under a mineral lease cannot take advantage of his own wrong or neglect and plead successfully abandonment of lease contract by himself to relieve himself of his obligation to pay ground rent specified therein.

**6. Mines and minerals ⬤➞79(6)—Provision for voiding mineral lease on failure to pay ground rent on notice by lessor did not inure to lessee's benefit.**

Mineral lease providing that, on lessee's failure to pay ground rent after 10 days' notice in writing by lessor, the lease should be null and void and both parties released from all liabilities *held* not to inure to benefit of lessee.

**7. Frauds, statute of ⬤➞63(2)—Agreement for surrender of written lease having more than year to run held within statute (Rev. St. 1925, art. 3995).**

An agreement for surrender of written lease having more than one year to run after date of surrender, whether such lease be an oil or gas lease or other kind of lease, is within statute of frauds (Rev. St. 1925, art. 3995), and not enforceable if not in writing and executed with statutory requirements.

**8. Frauds, statute of ⬤➞63(4)—Attempted rescission of executed contract of sale to reinvest title in vendor is within statute (Rev. St. 1925, art. 3995).**

An attempted rescission of an executed contract of sale so as to reinvest title in vendor is equivalent to a new contract of sale, and as

such is within the statute of frauds (Rev. St. 1925, art. 3995).

**9. Frauds, statute of ⬤➞63(2)—Surrender of oil lease granting vested interest can be effected only by instrument in writing complying with law relating to conveyances.**

Where an oil lease grants a vested interest in minerals and not a mere chattel interest, a surrender may not be effected by parol, but only by an instrument in writing complying with statutes relating to conveyances.

On Appellant's Motion for Rehearing.

**10. Mines and minerals ⬤➞78(1)—There is implied promise of diligent efforts by lessee to develop lands leased for oil or gas.**

There is always an implied promise of diligent efforts on part of lessee to develop land leased for oil or gas.

Conner, C. J., dissenting.

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Suit by W. C. Gholson against the Texas Pacific Coal & Oil Company, wherein Mrs. Gholson and another were made parties plaintiff after plaintiff's death. Judgment for plaintiffs, and defendant appeals. Affirmed.

John Hancock and Clarence Wightman, both of Fort Worth, for appellant.

Levy & Evans, of Fort Worth, for appellees.

BUCK, J. On October 23, 1917, W. C. Gholson, hereinafter styled plaintiff, conveyed to the Texas & Pacific Coal Company, whose name was subsequently changed by charter amendment to the Texas Pacific Coal & Oil Company, an oil and gas lease on 63½ acres of land near the city of Ranger, Eastland county, Tex., as shown by the instrument of conveyance, the pertinent portions of which are as follows:

"This lease made and entered into this 23d day of October, A. D. 1917, between W. C. Gholson, of Ranger, R. F. D. No. ———, and state of Texas, first parties, and the Texas & Pacific Coal Company, second party. Witnesseth:

"The first parties, in consideration of $6,350 to them paid, the receipt of which is hereby acknowledged, and the covenants hereinafter contained on the part of second party, do by these presents let and lease to second party for a period of 5 years from the date hereof, the following described premises situated in the county of Eastland and state of Texas, to wit, 63½ acres of land out of the Howell Hutson survey, this being all the land I own in said survey, except 151½ acres, formerly leased to the Texas & Pacific Coal Company.

"This lease and the former one convey all the land I own in the Howell Hutson survey, containing 63½ acres, more or less, hereby granting to second party full and exclusive authority to enter upon said premises and to dig, drill, operate for, and procure natural gas or

petroleum, together with the right of taking upon said premises and removing therefrom at pleasure any machinery, tools, lumber, pipe, casing, and other things necessary in said work, and to construct on said premises and remove therefrom at pleasure pumping plants, tracks, tanks, pipe lines and other things necessary in the operation of this lease, avoiding as far as practicable damage to fences and growing crops; but in case of damage to these second party agrees to pay such damage, the same to be fixed by appraisers, should the parties here-, to fail to agree to the amount of same.

"Beginning at the expiration of 12 months from the date hereof, second party agrees to pay first parties, 1 year in advance, ground rent at the rate of $100 per acre per annum, less the amount of any royalties paid by second party to first parties during the preceding year; and, should the royalties paid during the preceding year equal or exceed the ground rent for the ensuing year, first parties agree to accept said royalties as full payment of ground rent for said year.

"Should second party discover on said premises natural gas in paying quantities, and the same can be marketed to advantage, second party shall pay first party a royalty of 10 per cent. of the market price of the amount sold.

"In the event of the sale or marketing of petroleum, second party shall deliver as royalty to first parties, in tanks, near the mouth of the well or wells, without cost to first parties, one-eighth of such products, or pay the market price in cash thereof, at option of second parties, and the remainder of such products shall belong to the party of the second part. * * *

"It is further agreed between the parties hereto that in case natural gas or petroleum is discovered on said premises this lease shall continue in full force and effect so long as any of these are produced in paying quantities, but in the event of second party failing to pay the first parties in advance on 10 days' notice in writing by first party to second party, as above provided, the ground rent due under the terms and provisions hereof that this lease shall be, null and void, and the first and second parties shall be released from all liabilities herein mentioned. * * *

"It is agreed by the parties hereto that all the terms and conditions of this lease shall extend to and be binding on their heirs, executors, and assigns.

"In witness whereof the parties of the first and second parts have hereunto set their hand and seals the day and year first above written."

The first year's ground rental, amounting to $6,350, was paid on the execution of the lease. By agreement of the parties, the rental due on October 23, 1918, was receipted for by plaintiff in consideration of defendant drilling a well on the land.

On October 23, 1923, plaintiff sued the defendant in the district court of the Ninety-Sixth judicial district for the 2 years' rental from October 23, 1920, to the expiration of the 5 years' period. The well drilled by defendant to a depth of 3,665 feet produced from the time it was completed, to wit, August 5, 1919, to October 20, 1920, a total of 607.44 barrels. The well was then aban-

doned. Negotiations were had between plaintiff and defendant's agents just prior to the abandonment of the well by defendant looking towards an agreement and cancellation of the lease contract, but plaintiff would not so agree. On October 2, 1920, the defendant prepared and executed, by W. K. Gordon, vice president and, general manager, the following duly acknowledged instrument, and sent it to plaintiff by mail:

"Lease No. 833.       Release No. 324.

"The State of Texas, County of Erath—ss:

"Whereas, an oil and gas lease, dated the 23d day of October, A. D. 1917, and recorded in the county clerk's office of Eastland county, Tex., in Book 99, page 203, of Deed Records of said county, was given to Texas & Pacific Coal Company on certain real estate and premises in the county of Eastland and state of Texas, which are fully described in said oil and gas lease, given by W. C. Gholson and his wife, ———, to said company.

"Now, therefore, Texas Pacific Coal & Oil Company, successor to Texas & Pacific Coal Company, being the legal owner and holder of the above-described oil and gas lease, does hereby release the following described property from said oil and gas lease and declares the same extinguished: Howell Hutson survey—63½ acres.

"In witness whereof it has hereunto set its name at Thurber, Tex., this the 2d day of October, 1920. Texas Pacific Coal & Oil Company, by W. K. Gordon, Vice President."

The evidence shows that for several years prior to March 31, 1926, at which time W. C. Gholson dropped dead in his yard, the plaintiff was in a more or less precarious state of health. Mrs. Gholson, who with her only child, Mrs. Kolp, was made party plaintiff after Mr. Gholson's death, testified that after the beginning of Mr. Gholson's illness, in the latter part of 1919, he was never free from his sickness; that giving thought to business affairs had an effect on him, and that he had a nervous breakdown and was in bed a good deal of the time; that he was not able to attend to business.

The evidence shows that plaintiff received a letter from the defendant, in which was inclosed the instrument of October 2, 1920, and that after reading it, he placed it in his desk; that some time later he read the instrument again, and concluded that it was intended as a release of the defendant; and that he then went to see his lawyer, Mr. Levy, and had a conversation with him. Levy & Evans had an office at that time at Ranger, and the plaintiff had moved from Ranger to Fort Worth. Therefore they did not see each other very often, and suit was not filed until April 23, 1923. Prior to Gholson's death, his deposition was taken, and portions of that deposition were introduced into the record.

The evidence further shows: That shortly before the execution and delivery of this

purported notice of abandonment or cancellation, the plaintiff saw Mr. Bates Cox, who was connected with the defendant company, and talked with him. Mr. Cox was trying to get a cancellation of the lease contract, but plaintiff would not agree to it. That Mr. Cox told him that if he would not agree, defendant would plug the well and would execute to him a release. The plaintiff saw Mr. Cox later, about June 6, 1921, when he was in Ranger attending the funeral of a relative, and hold him that he did not think the defendant would abandon the well, but they had done so. Testimony of Cox is to the effect that the plaintiff told him that he did not think the defendant would execute a release to him, in their effort to abandon the well, but they had done so. But we must accept as true the evidence, which supports the verdict and judgment. The evidence further shows that at no time prior to the filing of the suit did plaintiff express to anybody his willingness or agreement to accept as an evidence of cancellation by him the instrument sent to him by the defendant, but stated to Cox that he had a cause of action against the defendant for injury to his land by plugging the well. At least, that is what Cox testified, and there is no evidence on the part of plaintiff that he told Cox, the only person connected with the defendant with whom he conversed about the matter, that he intended to sue them for the 2 years' rental. When he went to see his lawyer, Mr. Levy, he evidently learned that he had a cause of action, if any, for the rentals unpaid, and probably not for the plugging of the well. Hence, probably a year or more later, he filed this suit.

The cause was submitted to a jury on special issues, and the jury answered, first, that W. C. Gholson did not agree to a release of the lease agreement on the 63½ acres held by the defendant; and, second, that the said Gholson did not acquiesce in and agree to the abandonment of the lease contract by the defendant. Upon these two findings, the court entered judgment that the plaintiffs, that is, the wife and daughter of the original plaintiff, recover judgment from the defendant in the sum of $16,672.62, with interest at 6 per cent. from the date of the judgment, and that each of the two plaintiffs recover one-half of said judgment.

The evidence showed that during the time the well drilled on plaintiff's land was being operated, plaintiff received from September 20, 1919, to September 15, 1920, royalties amounting to $220.98. These royalties were deducted from the amount claimed to be due, and the judgment is for the remainder and the interest.

Appellant's contentions are that by the failure of plaintiff to return the release or instrument of cancellation or abandonment, whatever it may be called, to appellant, and the failure to deliver to them any communication or statement to the effect that he would not agree to the cancellation of the lease, as a matter of law, by reason of his long silence after receipt of the instrument, he must be held to have accepted and agreed to the release and the cancellation of the lease.

The testimony of W. K. Gordon, for the defendant, shows: That many wells were drilled on lands adjacent to and in the vicinity of the Gholson land, and that some of them proved to be dry holes, and others nonpaying producers. That about this time no producing well, paying a profit to the operator, was drilled anywhere in the immediate vicinity of the Gholson land. The evidence showed that both W. K. Gordon, for the defendant, and the plaintiff thought at the time the original lease was executed that there was an abundance of oil under the land described in the lease, and they traded in contemplation of the existence of such oil or gas. That hence, when it was proved, as the appellant contends it was proved, and as the evidence tends to show, that there was no oil in paying quantities under this land, the contract of lease failed for want of consideration, or for want of a subject-matter. It is urged that the trial court erred in admitting parts of the confirmation deed from W. A. Bolen to plaintiff, dated December 12, 1925, by means of which Bolen confirmed to plaintiff the reservation of the mineral rights and the ground rentals in a mineral lease that might be executed by plaintiff, or his assignees, as contained in a deed to the surface rights by Gholson to Bolen theretofore made. The contention is made, further, that the court erred in admitting certain testimony by L. M. Levy as to statements made by Gholson to him on or about the first of the year 1922. Further assignments are directed to the failure to give certain special issues tendered by the defendant and the failure to give certain special charges of the defendant. We will take these several matters up in due course.

### Opinion.

In discussing the questions involved in this case, we will first dispose of those questions that pertain to the trial of the case, such as the admission of the testimony claimed to be improper, the failure of the court to give certain instructions, and to submit certain issues, etc., and leave the vital questions; that is, as to whether by the conduct of plaintiff after he received the instrument of release, by his acts and conduct subsequent thereto and before he filed his suit, he accepted and agreed to said release and the cancellation of the lease sued on; and the further question, as to whether the fact that the land covered by the lease and the adjacent tracts thereto proved to be a non-

productive field constituted a failure of consideration, or an absence of the subject-matter, which, in the minds of both parties at the time the original lease was executed, constituted the basis of the contract, for later discussion.

[1] Under point 6 of appellant's brief, complaint is made of the admission, over the objection of defendant, of the following portions of the deed from W. A. Bolen to W. C. Gholson, dated December 12, 1925, to wit:

"Whereas, under date of October 23, 1917, W. C. Gholson, as lessor, leased and demised to Texas Pacific Coal Company certain property and premises situated in Eastland county, Tex., more fully described in that certain oil and gas lease recorded in volume 99, page 203, Deed Records of Eastland County, Tex., in which said lease the lessee therein named promised and agreed to pay certain ground rentals beginning at the expiration of 12 months after date of said lease; and

"Whereas, under date of February 16, 1921, the said W. C. Gholson and his wife executed and delivered to W. A. Bolen a general warranty deed, which is recorded in volume 205, page 321, Deed Records of Eastland County, Tex., wherein and whereby there was conveyed to the said W. A. Bolen the surface only of the same said tract of land covered by the mineral lease aforesaid, and in said conveyance the said W. C. Gholson and wife reserved all of the minerals in and to said lands; and

"Whereas, it was the mutual intention of the said W. C. Gholson and W. A. Bolen at the time of the execution and delivery of said deed that the said W. A. Bolen should not be entitled to any of the ground rentals to be paid under the mineral lease aforesaid, and it was the intention of said parties that such ground rentals should be reserved by the said W. C. Gholson."

The objection made in the bill of exceptions is that the evidence introduced constituted an ex parte statement of the parties to said instrument, not under oath, and not made in the presence and hearing of the defendant, and the defendant is not a party thereto, and the same is hearsay and pertaining to a material issue of fact involved therein. In appellant's brief complaint is made that the evidence is self-serving, but apparently no such objection was made in the trial court. The objection made in the trial court was to the entire three paragraphs. Certainly, there could be no legal basis for the objection urged to the introduction of the mere recitation that plaintiff had leased and demised to defendant certain property and premises situated in Eastland county, and that the defendant had promised and agreed to pay certain ground rentals beginning at the expiration of 12 months from the date of said lease. Nor do we think the second paragraph is subject to the objections made, that on February 16, 1921, the plaintiff and his wife had executed and delivered to W. A. Bolen a general warranty deed to the surface only of the land theretofore leased by plaintiff to defendant, and that in said conveyance

Gholson and wife reserved all the minerals in and to said land. The deed from the Gholsons to Bolen was introduced by defendant and contains this language:

"Provided, however, that it is expressly understood and agreed by and between the grantors and grantee that all oil, gas, coal, silver, gold, copper, and iron, or other mineral or minerals, or other mineral or mineral substances is not conveyed herein, but expressly and definitely reserved in grantors, and their heirs and assigns, together with the right of ingress and egress, and with the right to lay and maintain pipe lines for oil, water, gas, or other purposes and maintain storage tanks for storage of oil produced on the land, herein conveyed but on no other land, and the right to go on and mine with proper machinery any coal, gold, silver, copper, or other mineral that may be discovered on the property herein conveyed.

"It is further understood and agreed that Prairie Pipe Line Company has now a pipe line across said property which they have a right to maintain in accordance with their contract now of record."

Furthermore, the lease from the Gholsons to the defendant was put in evidence without objection, and constituted the basis of plaintiff's claim. Therefore the only portion of the admitted evidence of which reasonable complaint could be made is the last paragraph of the admitted portion of the so called confirmation deed. In many cases it has been held that where an objection has been made to the introduction of certain testimony or evidence, a part of which is admissible and a part inadmissible, the trial court is not required to separate the admissible from the inadmissible, and the admission of the whole is not reversible error. In the case of C. C. Slaughter Cattle Co. v. Pastrana (Tex. Civ. App.) 217 S. W. 749, writ of error dismissed by the Supreme Court, objection was made to the introduction of certain articles of incorporation, with an amendment thereto, parts of which were inadmissible and parts of which were admissible. It was held that the objection should not have been sustained on the ground that the trial court was not required to separate that which was admissible from that which was inadmissible, citing Railway Co. v. Gormley, 91 Tex. 393, 43 S. W. 877, 66 Am. St. Rep. 894, and Railway Comm. v. Railway Co. (Tex. Civ. App.) 212 S. W. 535. To the same effect are C., R. I. & G. Ry. Co. v. Johnson (Tex. Civ. App.) 156 S. W. 253, writ of error refused, and Wren v. Howland, 33 Tex. Civ. App. 87, 75 S. W. 894, writ of error refused. Moreover, Bolen himself subsequently testified without objection, under oath, to the same facts as are set forth in the recitals introduced in evidence. He testified as follows:

"You [Mr. Levy] told me that there was some question or might be some question arising out of Mr. Gholson's conveyance of the surface to me, and, if my agreement with Mr. Gholson was that I was not to have any of the

rentals, that you would like for me to sign this paper. I think you read the paper. You read it to me, and I said it was all right, because I was not to have any of the rentals, that he was to have them."

See Cook v. Carroll Land & Cattle Co. (Tex. Civ. App.) 39 S. W. 1006, writ of error refused; Clark v. Scott (Tex. Civ. App.) 212 S. W. 728; Driscoll v. Dennis (Tex. Civ. App.) 240 S. W. 1049.

Moreover, Bolen testified: That at the time the deed was executed by plaintiff to him, plaintiff did not tell him anything about an oil and gas lease to the Texas Pacific Coal & Oil Company being on this land, either in the letter written by Mr. Gholson to him or in the conversation he had with him in Fort Worth. That he did not mention this matter at all. He merely offered to sell to Bolen the mineral rights for $500. That he did not know anything about the rentals alleged to be due plaintiff from the defendant at the time he bought the land from Mr. Gholson. Bolen was the defendant's witness, and the third paragraph of this deed of conveyance, signed by Bolen, was probably admissible in rebuttal to the above testimony of Bolen. Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 507, writ of error refused; Matula v. Lane, 22 Tex. Civ. App. 391, 55 S. W. 504; Clark v. Scott (Tex. Civ. App.) 212 S. W. 728. The defendant below evidently contended that in the deed from Gholson to Bolen no reservation was made of the ground rentals, and it introduced evidence to the effect that Gholson had offered to sell to Bolen the mineral rights for $500, and had told him that he did not think they were worth 5 cents. Gholson had testified that he never agreed to a release of the defendant company from its claimed obligation to pay the ground rentals for the full 5-year period. Defendant introduced the deed from Gholson to Bolen and relied upon the same as a circumstance to show that Gholson had agreed to the release. We think the evidence introduced was admissible, also, as an explanation of the intent of the plaintiff in executing the deed to Bolen. Baker v. Maloney, 4 S. W. 469, by the Supreme Court; Delta Land & Timber Co. v. Spiller (Tex. Civ. App.) 216 S. W. 414, writ of error refused. We do not believe there was any error in the admission of this evidence.

[2] It is claimed that the admission of the testimony of L. M. Levy, that plaintiff had gone to his office and talked to him about a claim against the defendant something like a year before the filing of this suit, constitutes reversible error. The bill of exception shows that while Mr. Levy was on the witness stand he was asked:

"When Mr. Gholson first approached you what was the subject-matter about which he consulted you? A. The subject-matter was claims which he was making against the Texas Pacific Coal & Oil Company under this lease.

"Q. When he first consulted you, you say that was a year or 16 or 18 months prior to the filing of the suit—explain to the jury why nothing, why there was so much delay concerning taking action on the matter. A. When he first talked to me about the matter, he didn't go into it in any great detail. At that time he didn't have any papers—I was talking about our first conversation—he didn't have any of the papers with him, or at least didn't show me any. He merely mentioned these claims he was making and told me that at a later time he wanted to go into it more with me, with a view to bringing suit. He lived in Fort Worth at that time, and my office was in Ranger, and I didn't have an opportunity to see him as frequently as I might have done if we had been in the same town. I didn't undertake to urge him about the matter or hurry it up any way, and the next time it was mentioned was the time when he came to see me and brought the papers with him. Then, after that my recollection is—I know he didn't have a copy of the lease with him, and I told him I wanted to look at the lease, and I went to the deed records of Eastland, Tex., and inspected the lease and later conferred with him, and still later after I had formed some opinions as to what his rights were, I took the matter up with Mr. Hancock, attorney for the Texas Pacific Coal & Oil Company."

The objection to this testimony was that it pertained to material issues of fact involved in the case and related to a conversation and claim of W. C. Gholson to the rentals involved herein, made to his attorney, while not under oath and out of the presence and hearing of the defendant; that said statement was self-serving; that said statement and claim were hearsay and tended to prejudice the rights of defendant in the minds of the jury.

As before stated, Bates Cox, a witness for defendant, testified that on his second visit to Mr. Gholson's house, in Fort Worth, he discussed the delivery of the release with him and asked him whether he should mail it to him or bring it to him, and that Gholson said to mail it to him and gave him the address. Gholson testified several times that no such conversation occurred, and that he never did accept any release on the part of appellant. Appellant proved the so-called release was mailed to Gholson and apparently relied largely on the fact that Gholson retained the same and never did return it. Appellant introduced portions of the cross-examination in the deposition, asking him about having kept the release; likewise asking him was it not a fact that Mr. Cox told him the company was going to release the land, and he told him, "All right, to send it ahead." Gholson denied this. Appellant further asked Gholson in the deposition if he did not subsequently have a conversation in June with Bates Cox in which he said nothing about the claim for rentals, but told him that he was going to sue defendant for damages for plugging his well; also asked

him if he did not write letters to the company concerning the Hope lease on the adjoining tract without mentioning anything about the property in controversy, and introduced the letters in evidence; and also asked Gholson, was it not a fact that he never demanded the rentals. Appellant further proved that Gholson was in its office on several occasions during 1920 and 1921, and did not mention the matter in controversy, and never referred to the rentals. As before stated, appellant introduced in evidence a deed to the surface of the land from Gholson to Bolen, the effect of which, as claimed by the defendant, conveyed the rentals to Bolen, if such were the intentions of the parties. See Caruthers v. Leonard, 254 S. W. 779, by Commission of Appeals. Under all these circumstances, we think it was competent for the appellees to establish through the acts and conduct of Gholson, consistent with his testimony that he never had agreed or intended to agree to release appellant of the obligations under this lease, whatsoever such obligations had been. The testimony objected to does not set out any of the contents of the conversation which the witness had with Gholson, and the testimony is incorporated in two questions and the answers thereto. In Ætna Ins. Co. v. Eastman, 95 Tex. 34, 64 S. W. 863, the Supreme Court laid down the rule that introduction of declarations inconsistent with the testimony given by a' witness, and tending to show that by reason of some existing motive or influence his testimony is fabricated, warrants the admission of evidence of his former declarations corroborating his testimony only when they were made at a time when no such motive or influence existed. The testimony admitted in the instant case, concerning which objection was made, only tended to show that plaintiff, more than a year before the suit was filed, went to his attorney about some claim that he had against the defendant, and Mr. Levy's further testimony that at this time he was practicing at Ranger and plaintiff was living at Fort Worth, and that he did not have an opportunity to see his client as frequently as he might have done had he been in the town, etc., merely tends to show why the suit was not filed any sooner. We think that the testimony was not objectionable. Moreover, the objection was to the testimony as a whole, and certainly a large portion of such testimony was not subject to the objection made. Furthermore, Mr. Levy testified without objection to practically the same facts as were contained in the testimony to which objection was made. He testified:

"I knew the deceased, W. C. Gholson, during his lifetime very well. While I was at Ranger practicing law, I attended to quite a bit of business for him. He consulted me with reference to the matters here in controversy. My office was at Ranger. That was either the latter part of 1921—as best I can remember, it wasn't far from the first of 1922. I know it was something more than a year before this suit was filed, and may have been as long as 16 or 18 months. At that time Mr. Gholson lived in Fort Worth. My home was here, and my family was here, and I was here every week."

Moreover, the defendant's witness Bates Cox, on direct examination and prior to the time that the witness Levy testified, testified that Mr. Gholson told him in a conversation in the summer of 1921, that his health was very bad at the time he got the release, and at a later time he was looking through his papers and found it and was reading it and came to the clause wherein it stated that it released the company from all liability and the company released him, and Gholson said that put him to studying, and he took it to Mr. Levy at that time.

Appellant's witness G. D. Chastain testified substantially to the same facts.

W. C. Gholson testified without objection that he consulted Mr. Levy probably a year before suit was filed about this controversy. We do not think that there was any error in admitting this testimony.

[3, 4] In propositions 10 and 11 of appellant's brief, complaint is made that the court erred in refusing to charge the jury in connection with question No. 1, as to what would constitute, as a matter of law, an acceptance by W. C. Gholson of said release, and to instruct them that, if they believed from all the facts and circumstances in evidence that he intended to accept said release and dealt with said land and minerals as being free therefrom, they would answer said question, "Yes." If, as a matter of law, Gholson so acted with reference to this purported release that the defendant's officers were led into a reliance upon his acceptance thereof, to the detriment of the defendant, then Gholson would be estopped from denying that he did not accept the release tendered, If so, there would have been no occasion to submit the issue to the jury, but the court should have instructed the jury to return a verdict in favor of the defendant. We do not believe that the evidence is of such a nature as to warrant an instructed verdict for either party, though appellant and appellee each insists that a peremptory instruction should have been given. We think that the testimony shows, giving the utmost credence to plaintiff's testimony, as is our duty to do under the circumstances, that Gholson never accepted the so-called release tendered, or acquiesced therein; that at all times, and especially after he had read the release the second time and noticed its contents, he felt that he had been injured and was entitled to some relief from the defendant. He was not a lawyer and did not know what his remedies were until he had consulted a lawyer. Upon consulting a lawyer, he learned that he had the right to sue for the

balance due on the yearly rentals. On account of his sickness, no doubt, and his general nervous condition, he probably was not in a state of mind to decide promptly what he should do, and upon being advised by his lawyer as to the proper course to pursue he was not in a mental condition to act promptly upon such advice.

[5] We are of the opinion that, under the evidence, it cannot be properly claimed that the facts in this case show as a matter of law that the plaintiff either accepted or acquiesced in the attempted cancellation of the lease by the defendant. We are further of the opinion that there is a want of real consideration moving to the plaintiff to sustain the attempted cancellation. The rental of $100 per acre per annum constituted a substantial consideration for the original lease, and a failure to pay this amount on the due date, or a failure to drill a paying well, would be a failure ascribable only to the lessee. The principle that a lessee cannot take advantage of his own wrong or neglect and plead successfully abandonment of the lease contract by himself, to relieve himself of his obligation to pay rent, applies in an action to pay rent by the lessor in this character of case. In Summers on Oil and Gas, par. 168, it is said:

"The power to terminate an oil and gas lease, created by the actual or presumed legal intention of the lessee to relinquish his legal interest created therein, can only be asserted by the lessor or his assigns. If the lessee could assert such power, he would be permitted to escape his own duties under the lease by a failure to perform them. Therefore, whenever an action is brought against a lessee to recover delay rent, or for breach of his express or implied duties to test and develop the land, he is not permitted to set up as a defense that the lease has been terminated by abandonment."

See 2 Black on Rescission and Cancellation, par. 554; May v. Hazelwood Oil Co., 152 Pa. 518, 25 A. 564.

Where a lease contract contains a proviso that, on nonpayment of rent the term shall cease, such term is designed for the benefit of the lessor, and not for that of the lessee. Hence failure of the lessee to perform his covenants does not invalidate the lease under this provision, and he remains liable for the rent.

In Texlouana P. & R. Co. v. Wall, 257 S. W. 875, by the Commission of Appeals, it is held that it has never been the policy of the law to encourage a party to violate his contract in order to relieve himself of its obligations, and contracts should be construed to put the loss for breach on the defaulting party rather than on the party who is the innocent victim of the breach. Empire Gas & Fuel Co. v. Pendar, 244 S. W. 184, by the Galveston Court of Civil Appeals. We do not think that the defendant below had the right to abandon the lease during the continuance of the five years' period, at any

rate, and that it would be liable for the rental, even though a unilateral attempt had been made to abandon or cancel the lease. See Summers on Oil and Gas, par. 108. Nor do we think that the fact that no oil in paying quantities could be discovered under this land, or in the near vicinity thereof, would relieve the lessee of the duty to pay the rentals. Thornton on Oil and Gas, § 205, says:

"If the lease require the lessee to complete an oil well within a certain time or thereafter pay a certain sum annually until a well is completed, it is no excuse for not drilling the well that the premises were worthless for oil, and for that reason a well was never completed. In passing on the case, the court said:

" 'I do not think, however, that the fact of there being no oil or gas on the land, no matter how soon found out, could avail the defendant. The lessors were entitled to insist that this fact should be made manifest in the very manner agreed upon, or to demand the sum stipulated to be paid for delay. The covenant on this subject is absolute and unqualified, and provides for the doing of nothing that is illegal and improbable. If a clear, positive covenant, like the one before us, to do a lawful thing or pay a certain sum of money for not doing it, can be evaded by showing that the performance of the act did not benefit the covenantee, it is hard to tell where we could properly stop in applying the rule. We might presently reach a point where an action for liquidated damages for breach of an agreement not to engage in a certain business within designated limits might be defeated by proving that every one conducting the same business in the neighborhood had been losing money, and, for reasons shown, would probably continue to do so. * * * That the contract may have proved a losing one to the lessee or his assignee, the defendant, is neither here nor there. To quote the popular saying, "a contract is a contract," and no sufficient reason appears why the one under consideration should not be enforced.' "

In Butler v. City of Iola, 100 Kan. 111, 163 P. 652, the Supreme Court of Kansas said:

"The contention that the city has a right to surrender and cancel the lease on the ground that it is of no value cannot be sustained. If the rights obtained from the plaintiff had turned out to be of vast benefit to the city, it would seem a harsh rule which permitted plaintiff to terminate the lease and thereby deprive the city of its profit. On the other hand, it would be quite as unjust and inequitable to permit the city to speculate upon the future value of the lease, retain its rights under the lease if found to be valuable, and cancel the lease if found advantageous to do so. The city, like any other party, is bound by its contracts legally entered into. It cannot relieve itself of liability from its contract merely by proof that it has entered into a bad bargain."

Certain cases relied upon by appellant, such as Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601, Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309, and Thomason v. Ham, 113 Tex. 239, 254 S. W. 316, were cases in which the lessor was the complain-

ing party, and in spite of certain expressions therein, such as, "Such grants plainly cannot endure after their voluntary relinquishment by abandonment," the language used must be taken with the recognized limitation as to the issues involved, and they do not apply in a case like the one at bar, where the plaintiff is suing for rentals the lessee has promised to pay. Galey v. Kellerman, 123 Pa. 491, 16 A. 474; Wills v. Manufacturers' Natural Gas Co., 130 Pa. 222, 18 A. 721, 5 L. R. A. 603; Ray v. Western Penn. Natural Gas. Co., 138 Pa. 576, 20 A. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 922.

[6] We are further of the opinion that the language used in the lease contract, as follows: "But in the event of the second party failing to pay the first parties in advance on 10 days' notice in writing by first party to second party, as ' above provided, the ground rent due under the terms and provisions hereof that this lease shall be null and void, and the first and second parties shall be released from all liabilities therein mentioned"—should be construed as a provision not inuring to the benefit of the lessee, but that such provisions should be restricted to the benefit of the lessor.

[7] We are of the opinion that there is force in the contention of appellee that the purported release was ineffectual as a conveyance of an interest in real estate. An agreement for the surrender of the written lease, having more than one year to run after the date of the surrender, whether such lease be an oil and gas lease or other kind of lease, is within the statute of frauds (Rev. St. 1925, art. 3995) and not enforceable if not in writing and executed with the statutory requirements (Gardner v. Sittig, 222 S. W. 1090, by the Commission of Appeals).

[8] An attempted rescission of an executed contract of sale so as to reinvest the title in the vendor is equivalent to a new contract of sale, and as such is within the statute of frauds. Barrett v. Durbin, 106 Ark. 332, 153 S. W. 265; Erwin v. Daniels, 34 Tex. Civ. App. 378, 79 S. W. 61; Dial v. Crain, 10 Tex. 453; Ponce v. McWhorter, 50 Tex. 562; Campbell v. McFarlane (Tex. Civ. App.) 233 S. W. 110.

[9] Where an oil lease grants a vested interest in the minerals, and not a mere chattel interest, a surrender may not be effected by parol, but only by an instrument in writing complying with the statutes relating to conveyances. Shaller v. Allen (Tex. Civ. App.) 278 S. W. 873; Ward v. Tripple State Natural Gas & Oil Co., 131 Ky. 711, 115 S. W. 819.

On the contention that the instrument is is void as a conveyance for the want of a grantee, see Huntsman v. Bryant, 196 Ky. 312, 244 S. W. 701; Wright v. Lancaster, 48 Tex. 250; Nolte v. Meyer, 79 Tex. 351, 15 S. S. W. 276.

That the corporate seal was not affixed

1 S.W.(2d)—42

to said release, and no mention of its being affixed being contained in the body of the instrument, making the instrument a nullity as a conveyance, see article 1322, 1925 Rev. Civ. Statutes; Missouri, K. & T. Ry. Co. v. Faulkner, 88 Tex. 652, 32 S. W. 883.

We do not think that there was any error in the failure of the court to give certain tendered charges on behalf of defendant, to the effect that, if the acts and conduct of W. C. Gholson, after he received of defendant the release and surrender of his lease, showed that he acquiesced in said release and surrender, and thereafter considered his land free of said lease, they should so find. We have examined all of these special charges and do not find any error in the failure of the court to give them.

All assignments are overruled, and the judgment is affirmed.

CONNER, C. J. (dissenting). I have not been quite able to concur in the majority opinion. It seems undisputed in the evidence that at the time of the lease in question it was very confidently believed by both Mr. Gholson and representatives of the appellant company securing the lease that the land described in the lease was within proved territory, and rich in oil, and when the lease, as set out in the majority 'opinion, is construed in the light of those facts, with especial reference to paragraphs 2, 4, and 7, I incline to the view that upon appellant's failure to pay the rentals, as shown in the record, the lease by its own terms became of no further effect. It will be observed that the lease is not in the usual form treated in the authorities, and particularly does it differ in the paragraphs relating to rentals. These paragraphs, when construed in the light of the evidence and of the long delay of Gholson in claiming any benefit thereunder, indicate that the purpose and object to be attained in the insertion of the clause was by providing a penalty to insure an early development of the land, and not to embody a separable rental contract. It seems to me that their form and connection and Mr. Gholson's waiver of the rentals due under the terms of paragraph 4 for the years 1918 and 1919 indicates that the parties so construed the lease. That appellant later sufficiently developed the land seems to be unquestioned. It is to be observed that under the terms of the seventh paragraph it is provided in express terms that, in event of "second party [the appellant company] failing to pay the first party [Mr. Gholson] in advance on 10 days' notice in writing by the first party to second party, as above provided, the ground rent due under the terms and provisions hereof that this lease shall be null and void, and the first and second parties shall be released from all liabilities herein mentioned," thus preventing appellant from receiving the

benefit of any equitable or other excuse for its failure to pay rentals, and thus enabling Mr. Gholson, the lessor, without judicial or other action, to forthwith convey to another. The estate conveyed by the lease was clearly a limited one. It clearly terminated at the end of 5 years in the event no oil or gas was found and, as it seems to me, was also made terminable by the terms used in the subsequent condition of nonpayment of rentals. The lease, executed as it was by the lessor, is to be construed most strongly against him, and hence, as indicated, I incline to the view that the lease and all of its parts became, automatically, of no further force and effect upon the nonpayment of the rent.

The same final conclusion is reached by another line of reasoning urged in behalf of appellant.

The lease was for a term of 5 years, and so long thereafter as oil and gas were produced in paying quantities. Our Supreme Court has, in unmistakable terms, held an oil and gas lease in Texas to convey a determinable fee title, and has construed the same to contain a limitation—not a condition subsequent or a forfeiture—on the title granted and the term or duration of same. The expressed term of the lease—5 years, and so long thereafter as oil and gas is produced in paying quantities—is limited to so much of said time during which the lessee pursues the essential purposes of the lease. It seems to have been definitely settled that a complete abandonment of the lease automatically ends its terms, and all rights and duties of the parties as to the future are at an end.

Said limitation of the term to such a period as the lessee pursues the essential purposes of the lease is as much a part of the term as the 5 years and so long thereafter as oil and gas is produced in paying quantities. Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601; Robinson v. Jacobs, 113 Tex. 231, 254 S. W. 309; Thomason v. Ham, 113 Tex. 239, 254 S. W. 316; Stephens County v. Mid-Kansas Oil & Gas Co., 113 Tex. 160, 254 S. W. 290, 29 A. L. R. 566.

In the recent case of W. T. Waggoner Estate v. Sigler Oil Co., 284 S. W. 921, Section B of the Commission of Appeals, in discussing the effect of an abandonment of an oil and gas lease, after citing and analyzing the above cases, says:

"The reasoning which is unanswerable is that the nature of the grant is not an absolute fee, but a determinable fee, which fee is ended when the lessee ceases to exercise diligence in the development of the land for minerals according to the terms of the lease. This is not, perhaps strictly speaking, a condition subsequent, as a contract to drill within a definite time or the like, but rather it is a limitation affecting the extent of the estate granted. * * *

"The reasoning of the Supreme Court in the group of cases just discussed leaves no doubt; that that court recognizes a substantial dis-

tinction between a title upon condition subsequent and a determinable fee ending upon an event; that, where the essential purpose of the grant is the development of the lease and the production of oil, the grant is of a determinable fee ending with the cessation of such reasonable development and production; that this determination of the estate is not upon any principle of abandonment of title required. * * *

"We add this further word in emphasis of the controlling feature of these cases, as is perfectly apparent from a consideration of the opinions reviewed. The action to cancel, so-called, is not in reality the equitable action to forfeit for breach of covenant, either as to condition precedent or subsequent, and therefore to divest title for cause. It is in truth a proceeding to recover the land unaffected by the lease which has expired by its terms as interpreted. The case is maintained on the theory, not that the lease should be forfeited for cause, but that there is no further title—it has ended."

The foregoing opinion was approved by the Supreme Court, and is now pending on motion for rehearing on the question, as I understand, of whether a partial abandonment will work a termination of the lease, or whether it will require a total abandonment to terminate same. However, it seems to be the settled law that a total abandonment ends the term of a lease the same as an expiration of the primary term or a cessation of production in paying quantities after the expiration of the primary term.

The undisputed facts show, and the trial court found, that the lease in suit was completely abandoned and the lessor notified of said fact prior to the period for which rentals were recovered. The lease having been terminated by abandonment prior to said period, no further rentals accrued.

It is insisted that the lessee cannot take advantage of his own wrong. Under the terms of the lease, as construed by our Supreme Court, the lease is one upon a limitation and automatically ends upon the happening of the abandonment. The doctrine that a party to a contract cannot take advantage of his own wrong in ending same applies to contracts subject to forfeiture. It has no application to a grant upon a limitation. A limitation is self-enacting, regardless of the wish, knowledge, or consent of either party. 1 Jones on Real Property and Conveyancing, § 628; Brewster on Conveyancing, § 174; 1 Washburn on Real Property (6th Ed.) § 167; 1 Tiffany on Real Property (2d Ed.) p. 334; 21 Corpus Juris, p. 924.

The rental provision contained in the lease provides:

"Beginning at the expiration of 12 months from date hereof, second party agrees to pay first party, 1 year in advance, ground rent at the rate of $100 per acre per annum."

This provision is not a promise to pay rent for any definite time. It amounts to nothing

more than a promise to pay rent during the term of the lease. The term of the lease is for 5 years, limited, however, to such portion of said term as the lessee pursues its essential purposes. Upon the complete abandonment of the lease within said term, as was held in the case of Texas Co. v. Davis, supra, the term automatically ends. Thereafter there was not any lease in existence to pay rentals upon, and the term during which the lessee agreed to pay rental ended, and no future rental accrued thereunder.

Nor do I concur, if deemed material, in the conclusion, expressed or implied, that the release executed by the vice president of appellant company on the 2d day of October, 1920, was without effect because not impressed with a seal, and not in accordance with the requirements of the statute of frauds. It is true that it has been held, as asserted in the majority opinion, that a conveyance of oil and gas in place is a conveyance of real property and requires for its transfer an instrument in writing in all respects in compliance with the statutory requirements, but at the time of the execution of this release, if the evidence is to be credited, there was substantially no oil and gas in place to be conveyed, and it is well established that a sale or conveyance of a thing or property without actual or potential existence is of no force. The release therefore, I think, was competent to be considered for whatever it was worth on the issue of abandonment and of Mr. Gholson's consent thereto.

### On Appellant's Motion for Rehearing.

BUCK, J. Appellant's able counsel insists that the majority were wrong in the disposition of this appeal on original hearing, and especially in not holding that the oil and gas lease conveyed a base and limited fee for the first 5 years, such to be determined by (1) failure to find oil or gas under the ground, and (2) the election of the lessee to abandon the lease, and its abandonment. He again cites the cases of Sigler Oil & Gas Co. v. W. T. Waggoner Estate, decided by the Amarillo Court of Civil Appeals October 14, 1925 (see 276 S. W. 936), and by the Commission of Appeals on June 9, 1926 (see 284 S. W. 921), and Texas Co. v. Davis, 113 Tex. 321, 254 S. W. 304, 255 S. W. 601, by the Supreme Court. In the last-cited case, the Supreme Court held, quoting from the headnotes:

"A grant of the right to go upon land and prospect for oil, gas, and other minerals, and to continue such operations as long as profitable, held not to convey an absolute fee-simple interest in the minerals in place, but a determinable fee conditioned upon the commencement of operations within a given period and a continuance of operations during productivity which terminated upon cessation of such activities by the lessees."

In the last-cited case, the recited consideration was $1, which, of course, is a nominal consideration, and the further agreement, implied or not expressed on the part of the lessee to use reasonable diligence in development of the land. In order to delay forfeiture by the lessor, the lessee had the right to pay to the lessor $10 a year until an oil well was commenced or until shipments from the mine had begun, and it was agreed that the completion of the well should operate as a full liquidation of all rental under this provision during the remainder of the term of the lease. It was further provided that, in case the parties of the second part, the lessees, should bore and discover either oil or other minerals, then the conveyance should be in full force and effect for 25 years from the time of discovery of such oil or other minerals, and as much longer as oil, water, gas, or other minerals can be produced in paying quantities thereon. The lease contained this provision:

"This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement."

[10] There is always an implied promise of diligent efforts on the part of the lessee to develop the land leased for oil or gas, and the Supreme Court, recognizing this implied promise, held as before stated.

As said by the Supreme Court of North Carolina, in Conrad v. Morehead, 89 N. C. 35, cited in Texas Co. v. Davis:

"It would be unjust and unreasonable, and contravene the nature and spirit of the lease to allow the lessee to continue to hold his term [?] a considerable length of time, without making any effort at all to mine for gold or other metals. Such a construction of the rights of the parties would enable him to prevent the lessor from getting his tolls under the express covenant to pay the same, and deprive him of all opportunity to work the mine himself, or permit others to do so. The law does not tolerate such practical absurdity, nor will it permit the possibility of such injustice."

In the Waggoner Estate Case, supra, the Sigler Oil Company was the owner, by assignment, of an oil and gas lease on 3,000 acres out of a certain 85,000-acre tract described in a lease agreement between Electra W. Wharton et al. and W. G. Burton. The lessor was the plaintiff in that case, and sought to cancel the lease for failure of the lessee and his assigns to use reasonable diligence in the development of the land for oil and gas. The Commission of Appeals held, reading from the headnotes, as follows:

"In lease of land solely for mining and operation for oil, and chiefly in consideration of royalties, lessee has a determinable fee, ending, and authorizing cancellation, on breach of implied covenant for reasonable diligence in development, though there be no complete abandonment."

After the rendition of the opinion by Section B of the Commission of Appeals, and upon a motion for rehearing on the part of Sigler Oil Company, supported by eminent counsel in the employment of the large oil companies, as stated by counsel for appellant here in his oral argument, the Supreme Court set aside the judgment of the Commission of Appeals and agreed to hear the case itself. Through the courtesy of counsel for appellant, we have had the pleasure of reading the briefs prepared by Judge F. A. Williams, formerly a member of the Supreme Court, and Mr. Charles L. Black, an able member of the Texas bar. These able counsel have illuminated the question involved in the suit before the Supreme Court, and attack vigorously the claimed holding of the Commission of Appeals disregarding the limitation stated in the lease that the duration of the lease depends upon the exercise of reasonable diligence in the use of the property for mining purposes. It is admitted that:

"When the event stated in the 'words of limitation' appearing in the grant happen, the estate instantly ends. A limitation is self-operative in its effect. The happening of the event instantly destroys the estate, and it matters not that the event may happen without the act, volition, intention, wish, or even knowledge of either party. The reinvestiture of the title is by virtue of the language of the instrument, and not by virtue of the acts or even knowledge of the parties. * * *. When a determinable fee ends because of the happening of the event named in the limitation, the title immediately reverts to the grantor, even without his knowledge or intention. No additional act on his part is needed to accomplish the reversion; the instrument is self-operative. And when the reversion once takes place, the estate is totally destroyed and can only be recreated by another conveyance; no parol word or act is sufficient."

The counsel cite such authorities as 1 Jones on Real Property & Conveyancing, § 628 et seq.; Brewster on Conveyancing, § 174; 1 Washburn on Real Property (6th Ed.) § 167 et seq.; 1 Tiffany on Real Property (2d Ed.) p. 334 et seq.

But we do not believe that the questions involved in the Waggoner Estate Case are involved in the instant case, at least not on this motion for rehearing. The original plaintiff below, W. C. Gholson, leased the property for a substantial down payment, $6,300, and a further yearly rental of $100 an acre, for a total period of 5 years. In the suit filed in the trial court there was no question of a determinable fee, or a base fee, necessarily involved. As the majority see it, the only question involved in the suit of plaintiff below was as to whether the defendant below had promised and agreed, upon a valid consideration, to pay to the plaintiff the agreed yearly compensation for a continuance of the lease. If so, plaintiff was entitled to recovery. Nor do we believe that the lessee could, by reason of his own wrong, preclude the lessor from recovering his rental. In Wills v. Manufacturers' Natural Gas Co., 130 Pa. 222, 18 A. 721, 5 L. R. A. 603, the court said:

"It will be observed, moreover, that the Pennsylvania cases already referred to are all cases in which the forfeiture was set up by the lessor upon the default of the lessee; in none of them did the lessee set up his own default as a cause of forfeiture. No case has been called to our attention, in this or any other state, in England or elsewhere, which recognizes the doctrine that a party may take advantage of his own wrong, or set up his own default to work a forfeiture of his own contract."

See Ray v. Western Pennsylvania Natural Gas Co., 138 Pa. 576, 20 A. 1065, 12 L. R. A. 290, 21 Am. St. Rep. 922, in which the court said:

"The clear purpose of the parties to this lease was to have the lands developed, and the half-yearly payments, and the other sums stipulated, were intended not only to spur the operator, but to compensate Ray for the operator's delay or default. The lessor's hands have been tied for 2 years. We do not know that he lost anything in royalties, or that he suffered by drainage, for the territory might have proved unproductive; but, as the transaction was founded in the hopes that either oil or gas, or both, might be found in paying quantities, it was competent for the parties to contract in advance for the amount of compensation to which, in the event of delay or default in development, the lessor would be entitled. The provision for forfeiture was doubtless inserted in anticipation that the lessee might make default, and become unable to pay, in which event he might put an end to the lessee's pretensions, and seek other means of development. This clause having been inserted as a protection to the lessor, he had the right either to declare the forfeiture or to affirm the continuance of the contract, and, if the lessor did not choose to avail himself of the forfeiture, the lessee cannot set it up as a defense to an action in affirmance of the contract. * * *
"No case has been brought to our notice in which the lessee was allowed to take advantage of his own wrong, or to set up his own default, to work a forfeiture of his own contract."

While we have enjoyed the study of this case, and especially the able argument of the counsel, both oral and in their briefs, yet the majority are not of the opinion that the judgment rendered on original hearing is wrong. We recognize that the principles involved are important, but we do not feel that our conclusion is in conflict with any Supreme Court decisions cited or which we have been able to find.

Therefore the motion for rehearing is overruled.

CONNER, C. J., dissenting as before.