## TEXAS PACIFIC COAL & OIL CO. v. GHOLSON et al. (No. 1128—5066.)

Commission of Appeals of Texas, Section A. Jan. 9, 1929.

John Hancock and Clarence Wightman, both of Fort Worth, for plaintiff in error.

Levy & Evans, of Fort Worth, for defendants in error.

HARVEY, P. J. This suit was brought originally by W. C. Gholson, on April 23, 1923, against the plaintiff in error, the Texas Pacific Coal & Oil Company, a corporation, to recover two installments of "ground rentals" alleged to have accrued under a certain oil and gas lease on October 23, 1920, and October 23, 1921, respectively. The lease in question was executed on October 23, 1917, by W. C. Gholson to the Texas Pacific Coal Company, a corporation, whose name was afterwards changed to the Texas Pacific Coal & Oil Company. The lease covers 63½ acres of land in Eastland county belonging to W. C. Gholson, and reads as follows:

"This lease made and entered into this 23 day of October, A. D. 1917, between W. C. Gholson of Ranger, R. F. D. No. —— and State of Texas, first parties, and the Texas & Pacific Coal Company, Second party.

"Witnesseth: The first parties, in consideration of Six Thousand Three Hundred Fifty dollars to them paid, the receipt of which is hereby acknowledged, and the covenants hereinafter contained on the part of second party, do by these presents let and lease to second party for a period of 5 years from the date hereof, the following described premises situated in the County of Eastland and State of Texas, towit: 63½ acres of land out of the Howell Hutson survey, this being all the land I own in said survey, except 151½ acres, formerly leased to the Texas & Pacific Coal Co.

"This lease and the former one conveys all the land I own in the Howell Hutson survey. Containing 63½ acres, more or less, hereby granting to second party full and exclusive authority to enter upon said premises and to dig, drill, operate for and procure natural gas or petroleum, together with the right of taking upon said premises and removing therefrom at pleasure any machinery, tools, lumber, pipe, casing and other things necessary in said work, and to construct on said premises and remove therefrom at pleasure pumping plants, tracks, tanks, pipe lines and other things necessary in the operation of this lease, avoiding as far as practicable damage to fences and growing crops; but in case of damage to these second party agrees to pay such damage, the same to be fixed by appraisers, should the parties hereto fail to agree to the amount of same.

"Beginning at the expiration of 12 months from the date hereof, second party agrees to pay first parties one year in advance, ground rent at the rate of $100.00 per acre per annum less the amount of any royalties paid by second party to first parties during the preceding year; and should the royalties paid during the preceding year equal or exceed the ground rent for the ensuing year, first parties agree to accept said royalties as full payment of ground rent for said year.

"Should second party discover on said premises natural gas in paying quantities, and the same can be marketed to advantage, second party shall pay first party a royalty of 10 per cent of the market price of the amount sold.

"In the event of the sale or marketing of petroleum, second party shall deliver as royalty to first parties, in tanks, near the mouth of the well or wells without cost to first parties one-eighth of such products, or pay the market price in cash thereof, at option of second parties, and the remainder of such products shall belong to the party of the second part.

"A deposit of the moneys herein provided for to the credit of first parties in the F. & M. State Bank in the city of Ranger, Texas, shall be taken and accepted by them as payment.

"If gas is discovered in paying quantities on said premises, first parties shall have gas

free for domestic purposes for one house now on said premises.

"If gas or petroleum is discovered on said premises second party shall have and use, free of charge, all the gas or petroleum desired for drilling and operating purposes on these or adjoining premises.

"The second party shall have the free use of any water on said premises for drilling and operating purposes, except that no water shall be taken from any well used by first parties without their consent.

"It is further agreed between the parties hereto that in case natural gas or petroleum are discovered on said premises that this lease shall continue in full force and effect so long as any of these are produced in paying quantities, but in the event of second party failing to pay the first parties in advance on ten days notice in writing by first party to second party, as above provided, the ground rent due under the terms and provisions hereof that this lease shall be null and void and the first and second parties shall be released from all liabilities herein mentioned.

"The second party agrees to drill no well, except by consent of first parties, within 500 feet of any building now on said premises.

"It is agreed by the parties hereto, that all the terms and conditions of this lease shall extend to and be binding on their heirs, executors and assigns.

"In witness whereof the parties of the first and second parts have hereunto set their hand and seals the day and year first above written."

W. C. Gholson having died pending suit, the defendants in error, his heirs at law, were duly made parties plaintiff in his stead.

The cash consideration of $6,350 recited in the lease was duly paid in cash to Gholson by lessee, at the time the lease was executed. By agreement of the parties, the payment of the rental installment which fell due October 23, 1918, was waived by W. C. Gholson in consideration of the plaintiff in error drilling a well on the land. This well was drilled to a depth of 3,665 feet and was placed in operation about August 5, 1919. It produced oil, but not in paying quantities. The well was operated by the plaintiff in error until October, 1920, during which time it produced about 600 barrels of oil. No gas was found on the land, and no oil other than as stated. The rental installment which accrued October 23, 1919, was duly paid.

After various tests on and in the vicinity of the land in question, made prior to September, 1920, the plaintiff in error decided that the probability of discovering oil or gas in paying quantities on the land was not sufficiently strong to justify the company continuing development operations. In September, 1920, one Bates Cox, an agent of the plaintiff in error, called on W. C. Gholson, at his home, and proposed, in behalf of the plaintiff in error, that if Gholson would agree to waive future rental payments under the lease, the company would continue operations on the well that was already drilled on the land. He told Gholson that unless such rentals were waived the company would plug the well and cease to operate same. Gholson refused to waive such future rental payments, and told Cox that if the company plugged the well and ceased to operate same, he would sue the company for damages. About October 2, 1920, the plaintiff in error decided to abandon the lease. It thereupon plugged the well, removed all its tools and machinery from the premises, and abandoned the premises with intention never to resume operations thereon. Thereafter, on October 9, 1920, W. K. Gordon, the vice president of the plaintiff in error, signed and acknowledged the following instrument, which will be denominated herein as a release, to wit:

"Whereas, an Oil and Gas Lease, dated the 23 day of October, A. D. 1917, and recorded in the County Clerk's office of Eastland County, Texas, in Book 99, Page 203, of Deed Records of said County, was given to Texas & Pacific Coal Co. on certain real estate and premises in the County of Eastland, and State of Texas, which is fully described in said Oil and Gas Lease, given by W. C. Gholson and his wife, —————— to said Company.

"Now, therefore, Texas Pacific Coal & Oil Company, successor to Texas & Pacific Coal Company, being the legal owner and holder of the above described. Oil and Gas Lease, does hereby release the following described property from said Oil and Gas Lease and declares the same extinguished:

"Howell Hutson Survey,—63½ acres.

"In witness whereof it has hereunto set its name at Thurber, Texas, this the 2nd day of October, 1920.

"Texas Pacific Coal & Oil Company,
"By W. K. Gordon, Vice-President."

The above instrument was not executed under the corporate seal of the plaintiff in error.

On November 20, 1920, the board of directors of the plaintiff in error duly adopted a resolution ratifying and confirming all contracts and "releases of oil and gas leases and assignments of interests in oil and gas leases" theretofore executed by W. K. Gordon, vice president, in behalf of the company.

On October 11, 1920, the title clerk of the plaintiff in error, under direction of the general manager of the company, wrote and mailed to W. C. Gholson the following letter, to wit:

"Thurber, Texas, Oct. 11, 1920.

"W. C. Gholson, 1500 Elizabeth Blv'd., Fort Worth, Texas.

"Dear Sir: We hand you herewith our release No. 324, which cancels our lease No. 833,

covering 63½ acres in Eastland County, Texas, which was executed by yourself to this Company on October 23, 1917.

"Yours very truly,

"Texas Pacific Coal & Oil Co.,

"JEC        By L. D. Hawkins, Title Clerk."

Inclosed with this letter was the release above set out. The letter and release were received through the mails by W. C. Gholson in due course. At the time of their receipt Gholson was sick at his home in Fort Worth, and the release was laid aside by him with scant attention. He was confined to his home by sickness for several months thereafter. Upon the trial the deposition of W. C. Gholson was introduced, in which he testified, among other things, substantially as follows: That he (Gholson) never at any time accepted said release, or consented or intended to consent to release the plaintiff in error from the payment of future rentals as stipulated in the lease, or consented or intended to consent to abandonment of the lease by the plaintiff in error; that he had not been on the land in question since receiving the release, or denied the plaintiff in error the exercise of its rights under the lease; that he did not learn until some time after his receipt of the release that the plaintiff in error had plugged the well and abandoned the premises; that in June, 1921, he went to Ranger, in Eastland county, and there had a conversation with Bates Cox, the agent of the plaintiff in error. The substance of such conversation is thus stated by W. C. Gholson in his depositions: "I told him that I had been laid up, and was looking around at the time, and expected to sue them for damages over this. I was uncertain whether I would sue for oil or damages. This was the way the conversation came up and I told him that I had received the release and had not put it on record and did not intend to, and I was not satisfied with it all. This is, in substance, the conversation I had. * * * (On cross-examination) Answering your question that in that conversation with Mr. Cox about June 1, 1921, I stated to him then that I had in mind or might file suit against the Company for damages to my property in handling the well,—I will answer that is what I was working on at the time. I know I never told Mr. Cox I was willing to accept the release. I could not say I was unwilling. I told him I was going to sue them over the proposition. I would not say in exactly those words, that I told Mr. Cox I was unwilling to accept the release, but that was the substance of the conversation."

The release above mentioned was not returned to the company by Gholson, but was turned over by him to his attorney in this case, and was produced at the trial by the attorney. Prior to the filing of this suit, Gholson did not make demand on plaintiff in error for the payment of the rentals sued for

herein. He testified that the reason he did not make demand for payment was that Mr. Cox told him that the company was not going to pay said rentals. It was also in evidence that in October, 1920, W. C. Gholson had suffered a nervous breakdown and continued to the time of his death to be in extremely ill health and physically unable to attend to his business affairs generally. During the year 1921 and the early part of 1922, Gholson was several times in the offices of the plaintiff in error and conferred with the general officers of the company concerning other leases held by the company under Gholson, and on none of these occasions did he mention the release in question here or the claim he now asserts.

It was further shown that on February 16, 1921, W. C. Gholson and wife executed a deed by which they conveyed to one W. A. Bolen the 63½ acres of land in question. The said deed contains a provision which is expressed in the deed in the following words: "Provided, however, that it is expressly understood and agreed by and between the grantors and grantee that all oil, gas, coal, silver, gold, copper, and iron, or other mineral or minerals, or other mineral or mineral substances is not conveyed herein but expressly and definitely reserved in grantors, and their heirs and assigns, together with the right of ingress and egress, and with the right to lay and maintain pipe lines for oil, water, gas or other purposes and maintain storage tanks for storage of oil produced on the land, herein conveyed, but on no other land, and the right to go on and mine with proper machinery any coal, gold, silver, copper or other mineral that may be discovered on the property herein conveyed."

Bolen testified, without dispute, that the above deed was not intended to convey to him the "ground rentals" accruing under the lease in question. There was also introduced in evidence an instrument of date December 12, 1924, executed by Bolen, whereby the latter assigned to W. C. Gohlson all rights and claims to the rentals herein sued for which Bolen held or appeared to hold under the above deed. There is evidence, which is undisputed, to the effect that while Bolen was negotiating for the purchase of the 63½ acres of land, W. C. Gholson offered to sell him "the mineral rights" therein for the sum of $500.

The trial in the court below was had before a jury on special issues. Judgment was rendered in favor of the defendants in error for the rentals sued for, less credit for such oil royalties as Gholson had received while the well on the land was operated by the plaintiff in error. The Court of Civil Appeals affirmed that judgment. 1 S.W.(2d) 649.

Upon due consideration of the foregoing facts, in a conference with the Supreme Court, the conclusion has been reached that

such facts show, as a matter of law, that W. C. Gholson accepted the release which was tendered him by the plaintiff in error, and thereby, in legal effect, consented to a rescission of the lease contract and the obligation of the plaintiff in error to pay further installments of "ground rent." The trial court erred in refusing to instruct the jury, peremptorily, to return a verdict for the plaintiff in error as requested, and in rendering judgment for the defendants in error.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be reversed, and that judgment be here rendered for the plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.